## JOURDAN v. REED.

While the court should require a much stronger case to be made in an application for a new trial, where two verdicts have been rendered for the same party, yet the second verdict by no means concludes. the court from again granting a new trial, and especially when the second application, is placed upon another and different ground than that contained in the first motion.

Applications for new trials, for the reason that the verdict is against the evidence, are peculiarly addressed to the sound discretion of the court trying the cause; yet it is a legal· discretion, and must be legally and properly exercised.

Where the mind of the court is brought irresistibly to the conclusion, that the verdict was not the result of a free, sound and unbiased exercise of judgment on the testimony submitted, and that manifest injustice will result, if judgment is rendered on such verdict, it would be the right and duty of the court below to grant a new trial; and where such a case is made clearly apparent to this court, a new trial will be ordered, though refused by the District Court.

Where the jury have disregarded the law, or have rendered two concurring verdicts that show no fair and proper exercise of judgment on the testimony submitted, but have clearly found against the evidence, a third trial should be granted.

Where the plaintiff seeks to recover upon one kind of bailment, he must sustain that by proper and sufficient evidence, and cannot recover on .evidence which shows that another and different contract was made.

### Appeal from the Des Moines District Court.

THIS action was brought by Jourdan against Reed, for the value of twelve and a half ounces of gold dust, which he alleges he intrusted to defendant's care, to bring from California to plaintiff's wife in Burlington, in this state. The petition charges that the gold dust was delivered to the defendant, at his special interest and request; that defendant was to sell and dispose of the same, and pay the proceeds thereof to said plaintiff's wife; and that in consideration of such delivery, and of a certain reasonable reward and compensation to be paid to the said defendant by the plaintiff, the defendant undertook and promised the said plaintiff to render a just and reasonable account of said gold dust, to sell and dispose of the same, and pay over the proceeds to the wife

of plaintiff as aforesaid. The petition then avers a failure on the part of defendant to comply with his said undertaking, though often requested, and though he had long before the bringing of this suit arrived at Burlington, Iowa. In his answer, the defendant denies every material allegation contained in the petition, and also avers, that if he ever received such gold dust, the same was stolen from him on his return home from California, without any fault or negligence on his part.

On the trial, the only evidence on the subject of the contract between the parties, and as to how and under what circumstances, the money was sent, is contained in the deposition of one Charles H. Jourdan. As detailed by the witness, the contract was as follows: "In the month of January, 1850, the defendant, Reed, was about to leave California for his home in Burlington, Iowa, and having in his charge gold dust belonging to different persons, received from the plaintiff, Moses Jourdan, a bag of gold dust, containing twelve and a half ounces, to be sold with his own dust, and the proceeds to be delivered to Mrs. Catharine Jourdan, the wife of the plaintiff, on the arrival of the said Reed in Burlington, Iowa. Witness was present when plaintiff delivered the dust to defendant, and either weighed, or assisted in weighing, it. Plaintiff offered to pay defendant for carrying it, but defendant said he would not charge anything for it." In answer to the question, as to "what was to be paid Reed for taking charge of the gold dust, selling it, and delivering the proceeds according to his agreement with Jourdan?" the witness answers, "that Reed refused to take any pay—said he would charge nothing for it." He also states, that he thinks the defendant took the gold dust at the request of plaintiff, or at the request of witness, on behalf of plaintiff. This being all the testimony in any way relating to the contract, the jury found a verdict in favor of the plaintiff, for the value of the gold dust. The defendant moved for a new trial, because the verdict was against the evidence and the instructions of the court, which motion was overruled, and judgment entered on the verdict.

As the instructions of the court, are not complained of, and are not material to the decision of the cause, it is unnecessary to further refer to them.   The defendant appeals, and assigns for error, that the court erred in refusing to grant a new trial.

*J. Tracy* and *J. C. Hall*, for appellant.

*M. D. Browning*, for appellee.

WRIGHT, C. J.—The only question presented for our determination, is, did the court err in refusing to grant a new trial.   The plaintiff insists, that this case should not be reversed for a number of causes, that have no reference to the correctness or incorrectness of the ruling of the court, or the motion for a new trial; and it is proper that we first dispose of them.   It is first objected, that the motion for a new trial was not made until some eight days after the rendition of the verdict.   As disclosed by the record, however, the motion was made on the same day the verdict was rendered, though not finally disposed of until some eight days after the filing.   So that this objection would appear to have been founded on a mistake in fact, and it is unnecessary to further speak of it.   It is also claimed, that no exceptions were taken to the instructions of the court at the time, and not until after verdict.   As we do not understand that defendant objects to, or assigns errors on the instructions, it is entirely immaterial whether he did, or did not, except: Plaintiff's counsel also claims, that all the testimony is not contained in the deposition of Charles H. Jourdan, but that much other testimony was given as to the terms upon which defendant undertook to deliver this gold dust to plaintiff's wife.   If this appeared, or it did not appear, that this deposition was all the testimony on this subject, we should not hesitate to affirm the judgment.   The bill of exceptions signed by the judge, however, states that the only evidence with regard to the terms on which the bailment by defendant was undertaken, was that contained in the said deposi-

tion above recited. This is conclusive upon us, and if other evidence was, in fact, given on that subject, it is unfortunate for plaintiff that it was not referred to. Plaintiff also urges, that the record shows that a new trial had once before been granted defendant, and therefore we should be less inclined to interfere with the discretion exercised by the court below, in refusing the second application. This point is well worthy of consideration, and had the first application been based alone upon the same ground contained in the last motion, we should be much less inclined to interfere. The first motion, as we understand, however, was sustained, because of the discovery of new and material evidence; the last one is made, because the verdict is against evidence. While the court should require a much stronger case to be made, in an application for a new trial, where two verdicts have been rendered in favor of the same party, yet such second verdict by no means concludes the court from again granting a new trial, and especially when the second application is based upon another and different ground than that contained in the first. And as an appellate court, we are, and should be, much less inclined to disturb the judgment, when two verdicts have been rendered. Indeed, a very clear, strong, and conclusive case must be made out, and we must be entirely satisfied that the second verdict was flagrantly against the evidence, and that manifest injustice has been done the party complaining, otherwise we should not interfere with the order of the court in overruling the motion. These applications for the cause assigned in this motion, are peculiarly addressed to the sound discretion of the court trying the cause. Yet that is a legal discretion, and must be legally and properly exercised. Where the mind is brought irresistibly to the conclusion, that the verdict was not the result of a free, sound and unbiased exercise of judgment, on the testimony submitted, and that manifest injustice will result, if judgment is rendered upon such verdict, it would be the right and duty of the court below, to grant a new trial; and where such a case is made clearly apparent to this court, a new trial will be ordered, though refused by

the District Court. To hold otherwise, would be to take from the judge an essential power in the administration of the law, and make the verdict of a partial and corrupt jury, final and conclusive. *Lloyd* v. *McClure*, 2 G. Greene, 139.

This objection to granting a new trial, it is clear, applies more strongly where there have been two concurring verdicts. In such cases, a new trial should rarely be granted, unless some plain rule of evidence, or principle of law, be violated. But where the jury have disregarded the law, or have rendered two concurring verdicts that show no fair and proper exercise of judgment on the testimony submitted, but have clearly found against the evidence, a third trial should be granted. See *Frost* v. *Brown*, 2 Bay, 133; *Keble* v. *Arthurs*, 3 Binney, 26; *Commissioners of Berks* v. *Ross*, 3 Ib. 520; *Willkie* v. *Roosevelt*, 3 Johns. Cas. 206; *Trott* v. *West*, 10 Yerger, 500; *Wilson* v. *Greene*, 7 Humph. 513.

The only question in this case, then, is, was this second verdict so far in violation of the evidence, as that we can say, that the jury clearly and unquestionably disregarded the same, and did not exercise a fair and proper judgment therein? We have examined the testimony in all its weight, as favoring and sustaining this verdict, and are entirely unable to see how, in any fair and reasonable way, the jury could have found as they did. The court instructed the jury, in substance, that plaintiff must prove the contract of bailment as he had in his petition alleged, otherwise he could not recover. That contract, as there alleged, was, beyond all question, a bailment for hire, in which defendant undertook to carry and deliver the proceeds of the gold dust, for a certain reasonable reward to him to be paid. The evidence shows, quite as clearly as language can make it, that there was no such contract, but that defendant expressly refused to accept compensation, and undertook to take this money, not for hire, but as a gratuity, for the plaintiff. The different degrees required in these undertakings, and what negligence will render a party liable in one case, and not in the other, are well understood and clearly recognized by all

the books. This verdict finds, that, after a defendant has undertaken to act as bailee without hire or compensation, in which case one degree of diligence and care is required, still he·can be charged and made responsible as a bailee for hire, in which another and higher degree of diligence is required. If this was the rule, no man could ever be safe in becoming such gratuitous bailee. And how peculiarly unjust is such a rule, under the circumstances, as detailed in this case. The witness states that he thinks plaintiff, or witness for plaintiff, requested defendant to take this gold dust;·that defendant consented; that plaintiff offered to pay defendant a compensation, but defendant refused to receive it, and said he would charge nothing for it. And yet, after defendant, as we are bound to presume, with a knowledge of the law, has refused compensation, and thereby refused absolutely to take upon himself that degree of care and diligence consequent upon such a bailment as would thereby have been created, the jury say he shall be held to such diligence and care, in direct violation of his contract and undertaking. This was so manifestly unjust and unwarranted by the evidence, that a new trial should have been granted. Defendant, from the evidence, did not undertake to bring this dust, or the proceeds thereof, to plaintiff's wife, for compensation. On the contrary, he refused to so receive it; and after he had so brought it, under this testimony, he could not have recovered hire. He had expressly said he would charge nothing; and, with a full knowledge of this refusal, the plaintiff intrusted him with his gold dust; and he is liable on that contract, and must be judged by the rules that obtain with regard to that character of bailment, and not upon those that relate to a bailment other and different. Story on Bailments, 110. Had the plaintiff in this case declared, charging the defendant as a mandatory, as also a bailee for hire, or if he had sought to make him liable upon a bailment generally, without any allegation that he was to have compensation, the rule would be different. Having, however, sought to recover upon one character of bailment, he must sustain that by proper and sufficient evidence, and cannot recover upon

that which shows that another and different contract was made.    This defendant undertook to carry this gold dust, and deliver the proceeds to plaintiff's wife, without recompense.    That was a strict, technical mandate, and he was only liable for the loss, in case of gross negligence or breach of good faith.    2 Kent, 568 ; *Tracy* v. *Wood*, 8 Mason, 132. What would be such negligence would, of course, be affected by the nature and value of the property, and its liability to loss or injury.    Had he undertaken to carry it for hire and compensation, his liability would have arisen for less or ordinary neglect, provided he only engaged in this particular case, without being a common carrier.    These principles are well understood, and we only refer to them for the purpose of showing that the jury, in finding for the plaintiff, and thereby determining that the proof sustained the petition, must have held defendant liable for a degree of diligence, and for that degree of neglect, which he did not agree to be responsible for ; and have thereby made a contract for him, other and different than that which he made, as the law implies, with a full knowledge of his rights and liabilities, and to which plaintiff consented.

If we could see in this evidence anything that could, by any fair construction, sustain this verdict, we should not disturb the judgment.    Believing that such verdict was entirely unwarranted by the testimony, however, the judgment must be reversed.

Judgment reversed.